**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3967
_____

JUNEISA SLOWE STOKES,

Appellant

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY


_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cv-02719)
District Judge: Hon. Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
July 14, 2016
_____

Before: FUENTES, SHWARTZ, and BARRY, Circuit Judges.

(Filed: August 9, 2016)


_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Juniesa Stokes appeals the dismissal of her suit against her former employer, the Southeastern Pennsylvania Transportation Authority ("SEPTA"), alleging that she was fired in retaliation for refusing to comply with a job requirement that she claims would have put her health in imminent danger, in violation of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 et seq. For the reasons discussed below, we will affirm.

I

In October 2012, Stokes injured her hand while working for SEPTA's Regional Rail Division. While she was on medical leave due to the injury, she became pregnant. Although Stokes's orthopedist cleared her to return to work in August 2013, her obstetrician informed SEPTA of limitations on her ability to work due to her pregnancy. SEPTA's medical department confirmed that she could not perform her usual duties while pregnant, and she remained on leave. On October 9, 2013, Stokes's baby was delivered by Cesarean section and she was instructed to limit her activity for the next six to eight weeks. On October 15, 2013, she was examined by a nurse who became concerned that swelling in her legs could indicate a blood clot, a potentially dangerous condition. The nurse instructed her to stay on bed rest and continue to limit any activity.

Even though Stokes had notified SEPTA that she could not return to work until December 4, 2013 and that she was taking leave under the Family and Medical Leave Act, SEPTA told her that she was required to appear for a medical examination on

2

October 31, 2013.[1] Stokes attempted to reschedule or cancel the appointment, providing her medical restriction documentation to SEPTA again and reminding them that she was required to limit her activity. Stokes did not appear for her medical examination because she feared traveling to it, and was fired.

Stokes filed suit alleging that SEPTA violated the FRSA by taking adverse action against her due to her refusal to comply with a work order that contravened medical advice and would potentially have exposed her to serious health risks, in violation of § 20109. The District Court granted SEPTA's first motion to dismiss under Fed. R. Civ. P. 12(b)(6) without prejudice, holding that Stokes could not state a claim under § 20109(c)(2) in light of Port Authority Trans-Hudson Corp. v. Secretary, U.S. Department of Labor, 776 F.3d 157 (3d Cir. 2015) ("PATH"),[2] and that she had failed to sufficiently allege that traveling to the appointment would have posed the "imminent danger of death or serious injury" required by §§ 20109(b)(1)(B) and 20109(b)(2)(B)(i). App. 85. Stokes filed an amended complaint adding factual allegations in an attempt to support a claim under § 20109(b)(1)(B). The District Court dismissed the amended complaint under Rule 12(b)(6), holding that Stokes was not protected by the anti-retaliation provisions of the FRSA because she "was not reporting a hazardous safety or

---

[1] On October 28, 2013, SEPTA also told her that she would be terminated if she did not return to work.

[2] In PATH, we held that § 20109(c)(2) applies only to work-related injuries. 776 F.3d at 163-68. The "primary objective [of § 20109(c)] is to ensure that railroad employees are able to obtain medical attention for injuries sustained on-duty," as "[i]t seems unlikely that Congress was concerned about railroads disciplining employees for requesting medical treatment for off-duty injuries." Id. at 163, 166.

security condition . . . [n]or was [she] confronted with a hazardous safety or security condition related to the performance of her duties." App. 8 (internal quotation marks and citation omitted). Stokes appeals.

## II[3]

The FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA also protects employees against adverse action when they engage in protected activities including "refusing to work when confronted by a hazardous safety or security condition related to the performance of the[ir] [ ] duties," § 20109(b)(1)(B), or "requesting medical or first aid treatment, or [ ] following orders or a treatment plan of a treating physician," § 20109(c)(2). The FRSA provides:

> (b) Hazardous safety or security conditions.--(1) A railroad carrier engaged in interstate . . . commerce . . . shall not discharge . . . an employee for--
>      (A) reporting, in good faith, a hazardous safety or security condition;
>      (B) refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties, if the conditions described in paragraph (2) exist; or

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. Stokes filed a complaint with the Department of Labor ("DOL"). While ordinarily a case under the FRSA would be evaluated in administrative proceedings, and then appealed to this Court, filing in federal district court is appropriate where the DOL does not issue a decision within 210 days. 49 U.S.C. § 20109(d). We have jurisdiction under 28 U.S.C. § 1291.

We review the District Court's dismissal of a complaint under Rule 12(b)(6) de novo and, in doing so, "accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

4

(C) refusing to authorize the use of any safety-related equipment, track, or structures, if the employee is responsible for the inspection or repair of the equipment, track, or structures, when the employee believes that the equipment, track, or structures are in a hazardous safety or security condition, if the conditions described in paragraph (2) exist.

(2) A refusal is protected under paragraph (1)(B) and (C) if--

(A) the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;

(B) a reasonable individual in the circumstances then confronting the employee would conclude that--

(i) the hazardous condition presents an imminent danger of death or serious injury; and

(ii) the urgency of the situation does not allow sufficient time to eliminate the danger without such refusal; and

(C) the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work, . . . unless the condition is corrected immediately . . . .

. . .

(c) Prompt medical attention.--

(1) Prohibition.--A railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment.

. . .

(2) Discipline.--A railroad carrier or person covered under this section may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician, except that a railroad carrier's refusal to permit an employee to return to work following medical treatment shall not be considered a violation of this section if the refusal is pursuant to Federal Railroad Administration medical standards for fitness of duty . . . .

49 U.S.C. § 20109(b)-(c).

Stokes casts her claim as concerning a "hazardous safety condition" created by the combination of her non-work-related medical condition and SEPTA's directive that she attend a medical examination. She argues that SEPTA's decision to mandate her "attendance transforms the medical appointment into a work task." Appellant's Br. at 23.

5

She asserts that her dismissal was prohibited by § 20109(b)(1)(B) because she refused to comply with a "work order" to appear for a medical evaluation, which she asserts would have been "hazardous" to her personal safety. Appellant's Br. at 16. Even if we presume Stokes's failure to appear for the appointment constituted a refusal to work, she nonetheless fails to plead that any such refusal was motivated by a hazardous safety condition relating to the performance of her duties in the sense contemplated by the statute.

The employee protection provisions of § 20109 were intended to insulate whistleblowers who report or refuse to work in unsafe conditions on the railroad. See 49 U.S.C. § 20101. The statute plainly envisions "hazardous safety . . . condition[s]" to refer to conditions that are within the railroad's control or that impact its operation. See, e.g., § 20109(b)(1)(C) (extending protection to employees who "refuse[ ] to authorize the use of [ ] safety-related equipment, track or structures"); § 20109(b)(2)(C) (contemplating advanced notice to the railroad carrier that could allow the hazardous condition to be "corrected" before work stoppage takes place). The supposedly hazardous condition identified by Stokes, namely a personal risk due to a non-work-related event, had no bearing on the safe operation of the railroad. As the DOL's Administrative Review Board explained, "nothing in the statute indicates that the 'hazardous condition' extends beyond work-related safety conditions under the rail carrier's control and covers personal, non-work illnesses." Hunter v. CSX Transp., Inc., ALJ Case Nos. 2014-FRS-00128, 2015-FRS-00010 (ALJ Mar. 24, 2015) (holding that a non-work-related health

6

condition could not give rise to a claim under § 20109(b))[4]; see also PATH, 776 F.3d at 163-68 (discussing that § 20109(c) covers only work-related injuries). Although the medical appointment was a precondition to return to duty, the hazard Stokes faced by complying was not related or due to "the performance of [her]" ordinary duties. 49 U.S.C. § 20109(b)(1)(B). Put simply, the safety risk that Stokes identified was unconnected to railroad safety, and thus her refusal to appear due to a non-work-related risk to her was not covered by the FRSA.

Stokes chose to proceed under the FRSA as opposed to other statutes. The FRSA, however, does not provide her with protections for actions she took due to her non-work-related health condition even though she was a railroad employee. Thus, her claims under the FRSA were correctly dismissed.

III

For the foregoing reasons, we will affirm the District Court's order dismissing the amended complaint.

---

[4]The Department of Labor decision in Hunter is available at http://www.oalj.dol.gov/Decisions/ALJ/FRS/2014/HUNTER_DESMOND_A_v_CSX_TRANSPORTATION_I_2014FRS00128_(MAR_24_2015)_113253_CADEC_SD.PDF.